UNITED STATES BANKRUPTCY COURT
IN THE WESTERN DISTRICT OF MICHIGAN

IN THE MATTER OF:

GRAHAM LAND DEVELOPMENT ENTERPRISES, LLC

    Debtor.

_____/ /

Case No.: 14-00928
Chapter 11 – Filed: 02/19/14

IN THE MATTER OF:

SHAR GAL, INC.,

    Debtor.

_____/ /

Case No.: 14-00931
Chapter 11 - Filed: 02/19/14

### DEBTORS' MOTION FOR SALE OF REAL & PERSONAL PROPERTY LOCATED AT 715 SOUTH KALAMAZOO STREET IN PAW PAW, MICHIGAN, PURSUANT TO COURT ROOM AUCTION

    **NOW COME** Graham Land Development Enterprises, LLC ("Graham Land") and Shar Gal, Inc. ("Gallagher's Paw Paw") (collectively, "Debtors"), by and through their attorneys, Rayman & Knight, and for their Motion for Sale of Real & Personal Property Located at 715 South Kalamazoo Street in Paw Paw, Michigan Pursuant to Court Room Auction ("Motion"), state as follows:

### GENERAL ALLEGATIONS

    1.    On February 19, 2014 ("Petition Date") the Debtors filed Voluntary Petitions under Chapter 11 of the United States Bankruptcy Code ("Code").

    2.    Since the Petition Date, the Debtors have operated their businesses as Debtor-in-Possession, pursuant to §§ 1107 and 1108 of the Code.

    3.    No official committee of creditors holding unsecured claims has been appointed. No Trustee or Examiner has been appointed.

    4.    The Debtors file this Motion pursuant 11 U.S.C. § 363(b) and (f).

## OVERVIEW

5.  Graham Land is a real estate holding company which filed for Chapter 11 relief along with two operating entities. One of these entities, Gallagher's Paw Paw, has closed. The property it operated out of is the subject of this Motion. The other entity is Four Grahams, Inc. ("Gallagher's Kalamazoo"). It remains open and hopes to reorganizes through the filing of its combined Chapter 11 Plan along with Graham Land.

7.  The Debtors' only secured creditor (other than *ad valorem* taxes) is Mercantile Bank of Michigan ("Mercantile").

8.  Mercantile has consented to purchase the property commonly known as 715 South Kalamazoo Street, Paw Paw Michigan ("Real Property[1]") and the personal property of Gallagher's Paw Paw ("Personal Property") (collectively, "Property"), pursuant to 11 U.S.C. § 363(b), (f) and (k) as further set forth in this Motion

## RELIEF REQUESTED

9.  The Debtors have received an offer from West Coast Properties, LLC ("Buyer") to purchase the Real Property for the price of $390,000.00 and $10,000.00 for the purchase of the Personal Property (including the liquor license[2]) pursuant to this Motion and the attached Authorized Buy & Sell Agreement ("Agreement"). (*See*, Exhibit "B").

10. The *ad valorem* taxes are estimated to be $54,000.00.

11. The sale shall be subject to competitive bidding.

12. The sale shall be on an "AS IS" basis with no representations or warranties from the Debtor of any kind or nature.

---

[1] A copy of the Legal Description is attached as Exhibit "A".
[2] The liquor license cannot be transferred to a separate location and, as such, has little value. It is understood that the Buyer intends to open a Subway restaurant and may not use the liquor license.

13. The sale of the Property shall be sold free and clear of all liens, encumbrances, and/or claims therein in accordance with 11 U.S.C. §363(f), with said liens, encumbrances, and/or claims attaching to the sale proceeds in the same order of validity, rank, and priority as now exists.

14. Any party interested in purchasing the Property **must appear at the hearing scheduled for this Motion** and be prepared to bid in increments of $1,000.00 with the opening bid at $410,000.00. The prospective bidder must provide sufficient evidence of ability to close. The Debtors reserve the right to accept the best offer, which may not be the highest and the Debtors will seek authority to seek a back-up bidder. Any increase bid will be prorated between the estates of Graham Land and Gallagher's Paw Paw with 97.5% to Graham Land and 2.5% to Gallagher's Paw Paw.

15. The Property may be sold free and clear of liens because *ad valorem* taxing authorities which have liens for unpaid property taxes shall be paid in full at closing and as such the sale may be free and clear of their liens pursuant to 11 U.S.C. § 363(f)(3). In addition the only other secured creditor, Mercantile, consents to the sale and a such the Property may be sold free and clear pursuant to 11 U.S.C. § 363(f)(2). If there are any additional creditors claiming a lien, those creditors do not have valid recorded liens and as such their lies would be subject to bona-fide dispute, and as such, the Property may be sold free and clear of liens, pursuant to 11 U.S.C. § 363(f)(4). The Property may be sold free and clear of liens pursuant to 11 U.S.C. § 363(f)(2), (3) & (4).

16. Your Debtor seeks approval of the sale of the Property pursuant to 11 U.S.C. § 363(b), which provides in relevant part that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."

Case:14-00928-swd    Doc #:63    Filed: 01/05/15    Page 4 of 15

17. This Court has discretion to determine whether a sale of assets should be approved. *See, In re Embrace Systems Corp.,* 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995).

18. In determining whether a sale of assets outside the ordinary course of business should be approved pursuant to 11 U.S.C. § 363(b), a debtor has the burden of establishing that a valid business purpose exists. *See, In re Lionel Corp.,* 722 F.2d 1063, 1070-71 (2d Cir. 1983); *see also, In re Stephens Industry, Inc. v. McClung,* 789 F.2d 386 (6th Cir. 1986).

19. Graham Land is a real estate holding company. The Real Property is no longer occupied by an operating entity and must be sold. The Debtors have a valid business purpose for selling the Property. Further, there is no realtor commission associated with this sale as Debtors real-estate breakage agreements have expired. Instead, the Real Property was listed for sale on the Michigan Listing Services through Berkshire Hathaway Home Services ("Berkshire") for a fee of 1%. The Debtors' principal, Paul C. Graham, Sr., recently became a licensed realtor with Berkshire but shall receive no funds from the 1% service fee.

20. Once a debtor has articulated a valid business purpose, a presumption arises that the debtor's decision to sell the assets was made on an informed basis, in good faith and in the honest belief the action was in the best interest of the estate. *See, In re Integrated Resources, Inc.,* 147 B.R. 650, at 656 (S.D.N.Y. 1992); *In re S.N.A. Nut Company,* 186 B.R. 98 (Bankr. N.D. 111. 1995) (the business judgment rule is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interest of the company).

21. Courts within the Sixth Circuit have held that transactions may be approved under 11 U.S.C. § 363 when they are supported by sound business judgment. *See,* e.g., *Stephens Industries, Inc. v. McClung,* 789 F.2d 386, 389-390 (6th Cir. 1986) ("a court can authorize a sale

of a debtors' assets when a sound business purpose dictates such action"); *see also*, *In re Embrace Sys. Corp.*, 178 B.R. at 124; *In re North American Royalties, Inc.*, 276 B.R. 860, 866 (Bankr. E.D. Tenn. 2002); *In re Quality Stores Inc.*, 272 B.R. 643, 647 (Bankr. W.D.Mich. 2002) ("noting the 'wide business discretion' given to debtors selling assets under § 363").

22.   The sale is in the best interest of the estate and a valid business purpose exists.

23.   The sale should be approved.

24.   Your Debtors submit that the sale of the Property should be deemed free and clear of liens pursuant to 11 U.S.C. §363(f) for the reasons previously described herein.

## CONCLUSION

25.   The sale of the Property is in the best interest of the estate, the Debtors have a valid business reason to sell the property and this Motion should be approved.

26.   As the Buyer desires to close as soon as possible, the Debtors submit that it is appropriate to waive the provisions of Federal Rules of Bankruptcy Rule 6004(h).

**WHEREFORE**, your Debtors pray:

A.   That this Court enter an Order authorizing the sale, pursuant to 11 U.S.C. § 363(b), consistent with this Motion.

B.   That the Court enter an Order determining that the sale of the Property is free and clear of liens pursuant to 11 U.S.C. §363(f) with all liens attaching to proceeds.

C.   That the Debtors be authorized to execute a Deed and Bills of Sale consistent with the Motion and execute other such documents as are or may become necessary to effectuate the Sale.

D.   Authorize the Debtors to execute such documents as may be necessary to transfer the liquor license upon approval of the Michigan Liquor Control Commission.

E.  Authorize the Debtors to pay all *ad valorem* taxes and other closing costs including the Berkshire service fee.

F.  Authorize the Debtor to accept a back-up bidder.

G.  That this Court waive the provisions of Federal Rules of Bankruptcy Rule 6004(h).

H.  That this Court order such other relief as it finds just and equitable.

**RAYMAN & KNIGHT**
Attorneys for Debtors

By: _____
Cody H. Knight (P64811)

Dated: January 5, 2015

BUSINESS ADDRESS:
141 E. Michigan Avenue, Suite 301
Kalamazoo, MI 49007
Telephone: (269) 345-5156

## Real Estate

Land situated in the County of Van Buren, Village of Paw Paw, State of Michigan and further described as follows:

Beginning at a point found by commencing to the former centerline of Kalamazoo Street 1675 feet North 1 degree 04 minutes 33 seconds West from where said former centerline crosses the East and West quarter line of Section 13, Town 3 South, Range 14 West, according to the Government Survey thereof, and running thence, with bearings referenced to the orientation of the Michigan State Highway Department Survey of the relocated centerline of M-40 and M-119, North 88 degrees 55 minutes 27 seconds East 52 feet to the point of beginning of this description; thence South 1 degree 04 minutes 33 seconds East along the Easterly edge of said relocated M-40 and M-119 right of way, 155.35 feet; thence South 83 degrees 57 minutes 30 seconds East (along a line formerly described by compass bearings as South 83 degrees East) 80.51 feet; thence South 72 degrees 22 minutes 30 seconds East (along a line formerly described by compass bearings as South 71 degrees 25 minutes East) 178 feet to the former high water mark of the Mill Pond; thence North 1 degree 04 minutes 33 seconds West 222.42 feet; thence South 88 degrees 55 minutes 27 seconds West 248.49 feet to beginning, according to a Survey made by Smith and Smith, Inc., Registered Professional Engineers and Land Surveyors, Paw Paw, Michigan on February 13, 1964.

EXHIBIT

A

AUTHORIZED BUY & SELL AGREEMENT ("Agreement") OF THE
GREATER KALAMAZOO ASSOCIATION OF REALTORS®



Date 12/8, 2014   3:15 A.M/P.M.   (TIMES ARE KALAMAZOO, MICHIGAN TIME.)   MLS No. 14064826

## AGENCY

The undersigned Buyer and Seller each acknowledge that they have read and signed the Real Estate Agency Disclosure.

The agency relationships at the time of execution of this Agreement are as follows:

PAUL GRAHAM, Listing Broker represents: (Check only one)
[X] Seller Only
[ ] Seller and Buyer (Disclosed Dual Agent)
[ ] Neither (Transaction Coordinator)

_____, Selling Broker represents: (Check only one)
[ ] Seller Only
[ ] Buyer Only
[ ] Seller and Buyer (Disclosed Dual Agent)
[ ] Neither (Transaction Coordinator)

PAUL GRAHAM, Listing Salesperson represents: (Check only one)
[X] Seller Only
[ ] Seller and Buyer (Disclosed Dual Agent)
[ ] Neither (Transaction Coordinator)

_____, Selling Salesperson represents: (Check only one)
[ ] Seller Only
[ ] Buyer Only - Addendum #___
[ ] Seller and Buyer (Disclosed Dual Agent) - Addendum #___
[ ] Neither (Transaction Coordinator) - Addendum #___

## OFFER

1. **PRIOR OFFERS:** This offer terminates any prior offers or counteroffers between the parties for The Property.
2. **PROPERTY DESCRIPTION:** Buyer agrees to buy from Seller The Property located at 715 S KALAMAZOO ST, PAW PAW (Property Street Address) in the CITY/VILLAGE/TWP. of PAW PAW (CITY/VILLAGE/TWP. NAME), VAN BUREN County (COUNTY NAME), Michigan, and legally described as: _____ ("The Property") subject to existing zoning ordinances. TAX ID # _____
3. **SALE PRICE:** $400,000 / FOUR HUNDRED THOUSAND ($) Dollars
   The Property shall include all buildings, improvements, appurtenances, fixtures and, if now in or on the property, the following: antennas and/or satellite dishes including all accessories and complete rotor equipment (unless rented); all landscaping, including all plantings; landscape lighting; ceiling fans; lighting fixtures, light bulbs and their shades; built-in sound system wiring and built-in speakers; wall mounted hardware for TV's (excluding TV); security systems; fireplace doors, screens and grates; wood burners and fireplace inserts; drapery and curtain hardware; window shades and blinds; wall-to-wall carpeting; screens, storm windows and doors; stationary laundry tubs; all water conditioning equipment (unless rented); water heaters (unless rented); sump pumps; heating and air conditioning equipment (excluding window units); LP tanks (unless rented); water pump and pressure tank; underground sprinkling systems; built-in kitchen appliances; awnings; mail boxes; garage door openers and transmitters; attached work benches; all attached shelving; stationary outdoor grills; storage sheds; pool and pool equipment; fencing; affixed outdoor play equipment; affixed: smoke/fire detectors, carbon monoxide detectors, thermostats, timers, and under-cabinet appliances; invisible fencing and controllers; hot tub and/or spa and all related equipment, and _____

   But shall exclude RENTED ITEMS and DISH WASHER / PCO UNIT

4. **CLOSING:** Sale shall be closed on a day and time mutually agreeable to Buyer and Seller, but not earlier than 30 DAYS and not later than 40 DAYS. Buyer shall pay any closing fee charged by a title company, except Seller shall pay said closing fee and wood destroying insect inspection fee(s) if required by a VA lender. Seller shall pay real estate transfer taxes at the time the deed is delivered.

5. **POSSESSION:** Buyer shall be entitled to possession of The Property as follows: (Check one box)
   [X] At the completion of closing, OR
   [ ] Seller shall pay to Buyer at closing, a non-refundable delayed possession fee of $_____, and shall have the right to possession of The Property until 11:59 p.m. on the ___ day after the day of closing.
   Seller shall not be entitled to possession after the time agreed above. Unless otherwise provided in writing and signed by Buyer and Seller, Seller shall provide possession of The Property free from the rights of any other person or entity, including, but not limited to, tenants. At the time of transfer of possession of The Property, Seller shall have removed all personal property (unless otherwise stated in this or an additional written agreement), made arrangements for final payment on all utilities, and shall deliver all keys to Selling Broker or Buyer.
   The Property shall be free and clear of trash and debris; buildings and improvements shall be left in broom-clean condition. Seller shall maintain The Property in its present condition until time of possession in this transaction, normal and reasonable wear excepted. Seller shall pay for utilities and for any repairs due to damage caused by the Seller to the Property after closing and before transfer of possession. Seller is responsible for obtaining any insurance Seller deems necessary covering Seller to the time of transfer of possession.
   If Seller fails to give possession to Buyer as provided, Seller shall pay Buyer $_____ for each day that Seller retains The Property beyond the agreed time and shall be liable for all court costs and reasonable attorney fees incurred by Buyer in obtaining possession and collecting the amount due.

6. **ATTACHMENTS:** [ ] No  [X] Yes Attachments and/or addendum #: 219820

EXHIBIT B

Rev. 12/14/12          Page 1 of 6

 

## AUTHORIZED BUY & SELL AGREEMENT ("Agreement") OF THE
## GREATER KALAMAZOO ASSOCIATION OF REALTORS®

Date __12/8__, 201_4_  __3:15__ A.M./P.M.  (TIMES ARE KALAMAZOO, MICHIGAN TIME.)  MLS No. _____

### AGENCY

The undersigned Buyer and Seller each acknowledge that they have read and signed the Real Estate Agency Disclosure.

The agency relationships at the time of execution of this Agreement are as follows:

__PAUL GRAHAM__, Listing Broker represents: _____, Selling Broker represents:
(Check only one)                                                   (Check only one)
[X] Seller Only                                          [ ] Seller Only
[ ] Seller and Buyer (Disclosed Dual Agent)              [ ] Buyer Only
[ ] Neither (Transaction Coordinator)                    [ ] Seller and Buyer (Disclosed Dual Agent)
                                                         [ ] Neither (Transaction Coordinator)

__PAUL GRAHAM__, Listing Salesperson represents: _____, Selling Salesperson represents:
(Check only one)                                                   (Check only one)
[X] Seller Only                                          [ ] Seller Only
[ ] Seller and Buyer (Disclosed Dual Agent)              [ ] Buyer Only - Addendum # ____
[ ] Neither (Transaction Coordinator)                    [ ] Seller and Buyer (Disclosed Dual Agent) - Addendum # ____
                                                         [ ] Neither (Transaction Coordinator) - Addendum # ____

### OFFER

1. **PRIOR OFFERS:** This offer terminates any prior offers or counteroffers between the parties for The Property.
2. **PROPERTY DESCRIPTION:** Buyer agrees to buy from Seller The Property located at __715 S. KALAMAZOO ST, PAW PAW__
   (Property Street Address)
   in the CITY/VILLAGE/TWP. of __PAW PAW__ __VAN BUREN__ County,
   (CIRCLE ONE)   (CITY/VILLAGE/TWP. NAME)   (COUNTY NAME)
   Michigan, and legally described as: _____
   _____ ("The Property")
   subject to existing zoning ordinances. TAX ID # _____

3. **SALE PRICE:** $__400,000__ / __FOUR HUNDRED THOUSAND__ ) Dollars

   The Property shall include all buildings, improvements, appurtenances, fixtures and, if now in or on the property, the following: antennas and/or satellite dishes including all accessories and complete rotor equipment (unless rented); all landscaping, including all plantings; landscape lighting; ceiling fans; lighting fixtures, light bulbs and their shades; built-in sound system wiring and built-in speakers; wall mounted hardware for TV's (excluding TV); security systems; fireplace doors, screens and grates; wood burners and fireplace inserts; drapery and curtain hardware; window shades and blinds; wall-to-wall carpeting; screens, storm windows and doors; stationary laundry tubs; all water conditioning equipment (unless rented); water heaters (unless rented); sump pumps; heating and air conditioning equipment (excluding window units); LP tanks (unless rented); water pump and pressure tank; underground sprinkling systems; built-in kitchen appliances; awnings; mail boxes; garage door openers and transmitters; attached work benches; all attached shelving; stationary outdoor grills; storage sheds; pool and pool equipment; fencing; affixed outdoor play equipment; affixed smoke/fire detectors, carbon monoxide detectors, thermostats, timers, and under-cabinet appliances; invisible fencing and controllers; hot tub and/or spa and all related equipment, and _____

   But shall exclude RENTED ITEMS and __DISH WASHER / PCOLAB__ _____

4. **CLOSING:** Sale shall be closed on a day and time mutually agreeable to Buyer and Seller, but not earlier than __30 DAYS__ and not later than __90 DAYS__. Buyer shall pay any closing fee charged by a title company, except Seller shall pay said closing fee and wood destroying insect inspection fee(s) if required by a VA lender. Seller shall pay real estate transfer taxes at the time the deed is delivered.

5. **POSSESSION:** Buyer shall be entitled to possession of The Property as follows: **(Check one box)**
   [X] At the completion of closing, OR
   [ ] Seller shall pay to Buyer at closing, a non-refundable delayed possession fee of $_____, and shall have the right to possession of The Property until 11:59 p.m. on the _____ day after the day of closing.
   Seller shall not be entitled to possession after the time agreed above. Unless otherwise provided in writing and signed by Buyer and Seller, Seller shall provide possession of The Property free from the rights of any other person or entity, including, but not limited to, tenants. At the time of transfer of possession of The Property, Seller shall have removed all personal property (unless otherwise stated in this or an additional written agreement), made arrangements for final payment on all utilities, and shall deliver all keys to Selling Broker or Buyer.
   The Property shall be free and clear of trash and debris; buildings and improvements shall be left in broom-clean condition. Seller shall maintain The Property in its present condition until time of possession in this transaction, normal and reasonable wear excepted. Seller shall pay for utilities and for any repairs due to damage caused by the Seller to the Property after closing and before transfer of possession. Seller is responsible for obtaining any insurance Seller deems necessary covering Seller to the time of transfer of possession.
   If Seller fails to give possession to Buyer as provided, Seller shall pay Buyer $_____ for each day that Seller retains The Property beyond the agreed time and shall be liable for all court costs and reasonable attorney fees incurred by Buyer in obtaining possession and collecting the amount due.

6. **ATTACHMENTS:** [ ] No  [X] Yes Attachments and/or addendum #: _____

7.  **DISCLAIMER:** Buyer understands and agrees that the real estate Brokers and Salespersons do not warrant: (i) The Property boundaries, the size of the land, the size of the buildings and improvements; (ii) the condition of The Property; or (iii) that appropriate permits were obtained for repairs or other work performed on buildings or improvements. Buyer understands and agrees that the real estate Brokers and Salespersons also do not assume any responsibility for the representations made by Seller. It is further understood that no representations or promises have been made to Buyer by the real estate Brokers or Salespersons, or by Seller other than those contained in this Agreement or as otherwise made or given by Seller to Buyer in the written disclosure statement(s). Buyer and Seller both understand that Brokers and Salespersons are not environmental experts. Unless expressly contained in a written instrument signed by the Brokers, Brokers and Salespersons have no knowledge of, and make no representations regarding (a) the environmental condition of The Property, (b) the existence of underground storage tanks at The Property now, or in the past, (c) whether The Property is, has been or may be listed as a site of environmental contamination, or (d) whether any such sites are located in the proximity of The Property. If Buyer or Seller requests the Brokers or Salespersons to recommend inspectors, repairmen or other professionals, Buyer and Seller agree that the Brokers and Salespersons shall not be liable for errors or omissions made by said inspectors, repairmen or other professionals.

8.  **BUYER INVESTIGATIONS:** Buyer acknowledges that Buyer has been advised to carefully evaluate The Property to determine its condition. Buyer is aware that inspectors and inspection services are available to aid Buyer in these evaluations. Items Buyer should evaluate include, but are not limited to, the following: structural integrity; condition of mechanical systems; infestation by termites or other wood-destroying insects; environmental concerns such as underground storage tanks or abandoned uncapped wells; health or safety issues, including radon and mold.

    Buyer further acknowledges that Buyer has been advised to carefully investigate The Property to determine its suitability for Buyer's intended use. Items that Buyer should investigate include, but are not limited to: zoning; assessed valuation, including the Principal Residence Exemption status and any possible changes to that status; the size of the land; the size of the buildings and improvements; the availability of utilities, including the cost to extend or hook-up; soil erosion or settling; the existence of wetlands; the availability of homeowner's insurance or flood insurance at a cost acceptable to Buyer.

    Buyer shall have 10 days from the last dated acceptance of this Agreement ("Investigation Period") to investigate The Property. During the Investigation Period, Buyer and Buyer's representatives shall have reasonable access to The Property to conduct investigations as Buyer deems necessary. Buyer agrees to defend, indemnify and hold Seller harmless from any physical damage to persons or property resulting from such investigations. To the extent The Property is damaged due to any of Buyer's investigations or investigators, Buyer agrees to restore The Property to its original condition. Buyer is solely responsible for ordering and paying for any inspections and evaluations, except, if Buyer has elected to use VA financing, Seller shall pay for the wood destroying insect inspection at closing.

    If any inspection reveals conditions unacceptable to Buyer, Buyer shall deliver to Seller a written request for corrective action(s) along with a copy of any applicable documentation/report(s) AND ANY APPLICABLE WRITTEN COST ESTIMATE(S). These must be delivered to Seller or Listing Broker within the Investigation Period. Seller shall respond in writing to Buyer or Selling Broker within five (5) days as to whether Seller will agree to pay for and/or perform said requested corrective action(s). If Seller does not accept Buyer's request, or fails to respond, Buyer shall have three (3) days from receipt of Seller's written refusal, if any, or from the expiration of Seller's allowed time, to terminate this Agreement in writing.

    Alternatively, if any evaluation or investigation reveals a condition unacceptable to Buyer, Buyer may terminate this Agreement in writing provided that such termination identifies the unacceptable condition and is delivered to Seller or Listing Broker within the Investigation Period. If requested by Seller, Buyer shall provide Seller with a copy of any inspection report or documentation of unacceptable condition.

    BUYER AGREES THAT THE CONTINGENCIES IN THIS PARAGRAPH SHALL BE DEEMED TO HAVE BEEN WAIVED IF (1) BUYER FAILS TO DELIVER WRITTEN NOTICE OF BUYER'S PROPOSED RESOLUTION TO SELLER OR SELLER'S AGENT WITHIN THE INVESTIGATION PERIOD OR (2) BUYER FAILS TO TERMINATE THIS AGREEMENT IN WRITING AS PROVIDED ABOVE.

    IF THESE CONTINGENCIES ARE WAIVED, OR IF BUYER ELECTS TO CLOSE THIS TRANSACTION, BUYER SHALL BE DEEMED TO HAVE ACCEPTED THE PROPERTY IN ITS "AS-IS" CONDITION AS OF THE DATE OF CLOSING.

9.  **LOCATION OF BOUNDARIES AND IMPROVEMENTS:** Buyer may at Buyer's expense, obtain a survey or mortgage report of The Property. If the survey or mortgage report: (1) reveals material differences in The Property's boundaries or land area from that which was represented by Seller in writing, or (2) reveals encroachments, setback violations, or matters which would interfere with Buyer's intended use of The Property ("Survey Defects"), Buyer shall furnish Seller with a copy of the survey or mortgage report, along with a written request that Seller correct the Survey Defect(s). These must be received by Seller no later than fifteen (15) days after delivery of the title commitment referenced in Paragraph 16 to Buyer or Selling Broker. Seller shall respond in writing to Buyer within five (5) days as to whether or not Seller will correct the Survey Defect(s). If Seller does not agree to do so or fails to respond, Buyer shall have three (3) days from receipt of Seller's written refusal (if any) or from the expiration of Seller's allowed time, to terminate this Agreement in writing.

    BUYER AGREES THAT THIS CONTINGENCY SHALL BE DEEMED WAIVED IF (1) BUYER FAILS TO PROVIDE SELLER WITH A SURVEY OR MORTGAGE REPORT OR (2) BUYER FAILS TO TERMINATE THIS AGREEMENT IN WRITING AS PROVIDED ABOVE. IF THIS CONTINGENCY IS WAIVED AND BUYER ELECTS TO CLOSE THIS TRANSACTION, BUYER SHALL BE DEEMED TO HAVE ACCEPTED THE LOCATION OF THE PROPERTY BOUNDARIES AND IMPROVEMENTS, "AS IS".

10. **WELL/WATER/SEPTIC SYSTEM EVALUATIONS:** If The Property is serviced by a water well, Seller agrees to order within five (5) days of the last dated acceptance of this Agreement and promptly provide to Buyer and/or Selling Broker, at Seller's expense, an evaluation report from the County Health Department or the private well evaluation company listed in Paragraph 11, covering the well and tests for nitrates and bacteria in the water by either the County Health Department or other government approved laboratory. Any water evaluation beyond tests for nitrates and bacteria shall be Buyer's responsibility and Buyer's expense. If The Property is serviced by a septic system, Seller agrees to order within five (5) days of the last dated acceptance of this Agreement and promptly provide to Buyer and/or Selling Broker, at Seller's expense, an evaluation report covering the condition of the septic system by the local County Health Department or the private septic evaluation company named in Paragraph 11. Seller further agrees to have the septic tank pumped if required by the local County Health Department.

    If the evaluation report(s) in any of the above circumstances disclose(s) a condition which Buyer reasonably deems unacceptable, Buyer shall notify Seller or Listing Broker of such condition and requested corrective action in writing within five (5) days of the date Buyer has received the applicable report(s). If Seller does not agree or fails to respond within fifteen (15) days of Buyer's requested corrective action, Buyer shall have the right to terminate this Agreement by providing written notice to Seller or Listing Broker within three (3) days from receipt of Seller's written refusal (if any) or from the expiration of Seller's allowed time.

    BUYER AGREES THAT THE CONTINGENCY PROVIDED BY THIS PARAGRAPH SHALL BE DEEMED TO HAVE BEEN WAIVED IF (1) BUYER FAILS TO PROVIDE WRITTEN NOTICE OF A CONDITION DEEMED UNACCEPTABLE WITHIN FIVE (5) DAYS AFTER BUYER HAS RECEIVED THE APPLICABLE REPORT(S) OR (2) BUYER FAILS TO TERMINATE THIS AGREEMENT IN WRITING AS PROVIDED ABOVE.

    IF THESE CONTINGENCIES ARE WAIVED, OR IF BUYER ELECTS TO CLOSE THIS TRANSACTION, BUYER SHALL BE DEEMED TO HAVE ACCEPTED THE PROPERTY IN ITS "AS IS" CONDITION AS OF THE DATE OF CLOSING.

11. **PRIVATE WELL AND/OR SEPTIC EVALUATION COMPANIES:** Buyer and Seller agree that the following shall be used to evaluate the well/water/septic system per Paragraph 10: For evaluation of the well and water: _____. For evaluation of the septic system: _____N/A_____. A blank line shall indicate the agreement of Buyer and Seller to use the local County Health Department.

12. **SOURCE OF FUNDS:** This Agreement:
    - [X] **A. IS NOT CONTINGENT** on the sale or exchange of any real or personal property by Buyer. BUYER REPRESENTS THAT THE FUNDS NECESSARY TO COMPLETE THIS AGREEMENT (ON THE TERMS SPECIFIED) ARE CURRENTLY AVAILABLE TO BUYER IN CASH OR AN EQUALLY LIQUID EQUIVALENT.
    - [ ] **B. IS CONTINGENT ON:**
        - [ ] (1) **THE CLOSE OF THE PENDING SALE OF BUYER'S PROPERTY** located at _____. A copy of the agreement(s) to sell or exchange Buyer's property is being delivered to Seller or Listing Broker along with this offer. Buyer shall notify Seller or Listing Broker in writing within 48 hours of any changes in the terms or progress of said agreement(s) that will delay or materially affect the consummation of this Agreement. In such an event, Seller may terminate this Agreement by written notice to Buyer or Selling Broker within 48 hours of receipt of said notice from Buyer. Failure of Buyer to notify Seller of such changes, or a default by Buyer in said agreement(s), shall be considered a default in this Agreement.
        - [ ] (2) OTHER: _____

13. **METHOD OF PAYMENT:** All moneys must be paid in US funds by wire transfer, certified check, cashier's check, or money order. The sale will be completed upon Seller's delivery of a warranty deed conveying marketable title by the following method:
    - [ ] **A. CASH.** Buyer will pay the sales price by cash, certified check, cashier's check or money order.
    - [X] **B. NEW MORTGAGE.** This Agreement is contingent upon Buyer's ability to obtain a(n) _____ (type) mortgage loan in the amount of $_____ or _____ % of the purchase price. Buyer shall apply for the loan from _MERCANTILE_ (name of financial institution – Lender) within _____ days of the last dated acceptance of this Agreement. Loan application shall include the payment of any appraisal fee, application fee, and all other costs customarily charged by Lender for loan approval. Buyer acknowledges that failure to complete the loan application as agreed shall constitute a default by Buyer. Buyer shall take no action that would impair Buyer's credit or ability to obtain the loan and shall accept such loan if offered. Buyer may waive this mortgage loan contingency by written notice to Seller or Listing Broker and pay cash as provided in sub-Paragraph A above.

        Seller may terminate this Agreement by written notice to Buyer or Selling Broker if Buyer fails to provide Seller or Listing Broker with evidence of loan approval by 5:00 p.m. _____ ("Loan Approval Deadline Date"). If Buyer is unable to obtain written verification of Lender's approval, Buyer may provide oral verification from Lender to Seller or Listing Broker. If said loan approval is acceptable to Seller, no response shall be necessary.

        If Seller reasonably determines that the evidence of loan approval is inadequate or unacceptable and if Seller therefore wishes to terminate, Seller must deliver written notice of termination of this Agreement by 5:00 p.m. on the third day after the Loan Approval Deadline Date. If Seller so terminates, Buyer may waive this mortgage contingency and void the termination by delivering written notice of such waiver to Seller or Listing Broker by 5:00 p.m. on the third day after Seller's delivery of termination. If Buyer waives this mortgage contingency and subsequently fails to close due to Buyer's failure to secure financing, Buyer shall be considered in default in this Agreement.
        **BUYER HEREBY INSTRUCTS LENDER TO RELEASE TO SELLING BROKER AND SELLER OR LISTING BROKER INFORMATION CONCERNING COMPLETION OF LOAN APPLICATION AND STATUS OF LOAN APPROVAL.**
    - [ ] **C. LAND CONTRACT.** Seller represents that the Property is not currently or will not be at the time of closing encumbered by a mortgage containing a due on sale clause. (IF THE PROPERTY IS CURRENTLY OR WILL BE AT THE TIME OF CLOSING ENCUMBERED BY A MORTGAGE CONTAINING A DUE ON SALE CLAUSE, SELLER SHOULD NOT SIGN THIS AGREEMENT UNTIL ALL LEGAL ISSUES RELATING TO THE DUE ON SALE CLAUSE HAVE BEEN FULLY RESOLVED.) Buyer shall pay $_____ upon execution and delivery of GKAR Land Contract Form 2012. Buyer and Seller acknowledge they have received a blank copy of said form and have reviewed to their satisfaction. The balance of $_____ shall be payable in monthly installments of $_____ or more including interest at _____ percent per annum, computed monthly. The first payment shall be due thirty (30) days after closing. Buyer shall pay the entire balance, which may require a balloon payment, within _____ years after closing. Buyer shall: [ ] pay taxes and insurance directly; or [ ] add one-twelfth of estimated annual taxes and insurance to monthly principal and interest and Seller shall pay taxes and insurance. Land contract preparation costs shall be paid by Seller.

        This Agreement is contingent upon Seller's review and acceptance of credit and financial information on Buyer. Buyer agrees to provide such information to Seller or Listing Broker within five (5) days of the last dated acceptance of this Agreement. Seller may rescind this Agreement by delivering written notice to Buyer or Selling Broker within ten (10) days of the last dated acceptance of this Agreement if Buyer has not furnished evidence acceptable to Seller, in Seller's sole discretion, of Buyer's credit and capacity to purchase The Property. Seller understands that the Brokers and Salespersons make no representations concerning Buyer's financial qualifications.

14. **SELLERS DISCLOSURE STATEMENT:** BUYER [X] HAS  [ ] HAS NOT RECEIVED A COMPLETED AND SIGNED COPY OF THE SELLER'S DISCLOSURE STATEMENT # _____ DATED OR REVISED _____. SELLER HEREBY CERTIFIES THAT, TO THE BEST OF SELLER'S KNOWLEDGE, THE INFORMATION CONTAINED IN SUCH SELLERS DISCLOSURE STATEMENT IS CURRENT AS OF THE DATE OF THIS AGREEMENT. FURTHER, SELLER AGREES TO INFORM BUYER IN WRITING OF ANY CHANGES IN THE CONDITION OF THE PROPERTY RELATING TO THE INFORMATION CONTAINED IN SUCH DISCLOSURE STATEMENT.

15. **LEAD BASED PAINT DISCLOSURE STATEMENT:** BUYER [ ] HAS  [ ] HAS NOT RECEIVED AN EPA PAMPHLET *"PROTECT YOUR FAMILY FROM LEAD IN YOUR HOME"* AND A COMPLETED AND SIGNED COPY OF THE SELLER'S LEAD BASED PAINT DISCLOSURE STATEMENT # _____

    If The Property was constructed prior to January 1, 1978, Buyer will not be obligated to the terms of this Agreement unless the above documents are received by Buyer. If the above documents are received after the last dated acceptance of the Agreement, Buyer shall have the right to terminate this Agreement within 72 hours after Buyer's receipt of the above documents if the Seller's Lead Based Paint Disclosure Statement indicates any condition unacceptable to Buyer. If Buyer fails to terminate this Agreement within said 72 hours, Buyer's right to terminate under this provision shall be considered waived. BUYER [ ] WAIVES OR [ ] REQUESTS LEAD BASED PAINT INSPECTIONS TO BE PERFORMED PER LEAD-BASED PAINT ADDENDUM # _____ WHICH IS ATTACHED HERETO.

16. **TITLE EVIDENCE:** Seller agrees to convey marketable title to The Property subject to: conditions, limitations, building and use restrictions and easements of record ("Exceptions"). As evidence of marketable title, Seller shall furnish Buyer, at Seller's expense, an ALTA 98 Owner's Policy of Title Insurance, if available, in the amount of the purchase price. Seller shall order the commitment for such policy, along with copies of the Exceptions, and shall deliver same to Buyer or Selling Broker within ten (10) days after the last dated acceptance of this Agreement. If a survey or mortgage report is required by the title commitment, it shall be completed at Buyer's expense in accordance with Paragraph 9 LOCATION OF BOUNDARIES AND IMPROVEMENTS. If an ALTA 98 policy is not available or if Buyer declines the ALTA-required survey or mortgage report cost, Seller agrees to provide and Buyer agrees to accept an Owner's Policy of Title Insurance with standard exceptions.

    If the title insurance commitment discloses any title defect(s) or anything in the Exceptions which would interfere with Buyer's intended use of The Property, Buyer must notify Seller or Listing Broker, in writing, of Buyer's objections within five (5) days of Seller's delivery of the title insurance commitment and Exceptions. Further, if, prior to closing, Buyer shall become aware of new title defect(s), Buyer must notify Seller or Listing Broker, in writing, within five (5) days of Buyer becoming aware of such defect(s).

    If Seller receives any such notification, Seller shall have either thirty (30) days from Buyer's delivery of written objection(s) or until the latest closing date set forth in Paragraph 4 of this Agreement, whichever first occurs, to resolve Buyer's objection(s). If Seller is unable to cure the title defects(s), or unable or unwilling to resolve Buyer's objection(s) to Exceptions, within this time period, Buyer may terminate this Agreement in writing and receive a full refund of the earnest money deposit or proceed to closing, accepting the status of the title "AS IS".

17. **PRORATIONS:** Items normally prorated in real estate transactions, including association fees, rental income, taxes as discussed below, interest on any existing land contract, mortgage, or lien assumed by Buyer shall be adjusted to the date of closing in accordance with the calendar year. All rental security deposits shall be paid to Buyer at closing.

18. **REAL ESTATE TAXES:** Current real estate taxes shall be prorated to the date of closing and shall be deemed to cover the calendar year in which they become due and payable. Taxes shall be deemed due and payable as follows: Summer taxes – July 1st or August 1st; Winter taxes – December 1st. If the actual tax bill(s) for the year have not been determined by the municipality at the time of closing, taxes shall be estimated by multiplying the current taxable value by the most recently available tax rate. If The Property's Principal Residence Exemption ("PRE") status for the calendar year in which the closing occurs will change as a result of the closing, the tax rate associated with the new PRE status shall be used.

    If the current PRE percentage claimed by Seller is greater than zero, Seller represents that such claim by Seller is accurate and lawful. Such representations shall survive the closing. Seller shall defend, indemnify and hold harmless Buyer from any loss, claim or damage resulting from any inaccuracy in such representations. Such loss, claim or damage shall include, but shall not be limited to, any loss, claim or damage resulting subsequently to Buyer from the tax proration calculation made at the time of closing or from the change in PRE status by the municipality for any prior years. Seller shall also be responsible for actual, reasonable attorney fees incurred by Buyer in enforcing the provisions of this paragraph, regardless of whether suit is actually filed. The representations and obligations under this paragraph may only be terminated by a separate written document signed by Buyer and Seller specifically referring to this paragraph by number.

19. **SPECIAL ASSESSMENTS:** The outstanding balance of the amount owing of the lien of any special assessments shall be paid by Seller at the time of closing, except that special assessments becoming a lien after the last dated acceptance of this Agreement shall be paid by Buyer.

20. **WATER/SEWER CHARGES:** Seller shall be responsible for water and sewer charges until date of possession. The cost of water and sewer hookups after closing shall be paid by Buyer. If The Property is not presently served by these utilities, Buyer is advised to consult with the local units of government for information regarding when and if such hookup is or may be required, feasibility and cost of such hookup, and whether any assessment will be imposed at that time.

21. **LIQUID FUEL:** Seller agrees that the existing supply of liquid heating and cooking fuel shall be depleted only in the course of normal usage. Buyer shall be entitled to all such fuel owned by Seller and located or stored upon The Property at the time of possession. Buyer acknowledges Buyer has been advised to determine whether any existing supply of L.P. is owned by Seller or the supplier.

22. **SELLER'S REPRESENTATIONS:** The following representations shall survive the closing and, except as otherwise disclosed in writing, Seller represents to the best of Seller's knowledge and belief that:
    A. There are no existing violations of any laws, statutes, ordinances, regulations, orders or requirements of any governmental authority affecting The Property.
    B. There is no pending or threatened litigation, administrative action or claim relating to The Property.
    C. The Seller is the owner of title to The Property in the condition required for performance hereunder.

    If The Property is rented to tenants:
    D. As referenced in Paragraph 5, Seller shall notify Buyer or Selling Broker in writing of the possession rights of any person or entity, including, but not limited to, tenants. Seller shall provide copies of all leases and security deposit information to Buyer or Selling Broker within three days of the last dated acceptance of this Agreement. This Agreement is contingent upon Buyer's written acceptance of such possession rights, leases and security deposit information within five days of receipt of such notice and copies. If Seller does not provide such notice and copies within such three days, Seller warrants that no other person or entity has possession rights. If Buyer receives such notice and copies and neither accepts nor rejects such items within the five days, Buyer shall be deemed to have accepted them and this contingency shall be deemed satisfied.
    E. None of the tenants occupying The Property shall be entitled to any concessions, rebates, allowances or free rent for any period after the Closing Date.
    F. After the date hereof, the Seller will not enter into any agreement pertaining to The Property or any modification of, or release from, an existing lease or rental agreement, without the prior written consent of Buyer.

23. **FINAL INSPECTION:** Buyer shall have the right to inspect The Property within seventy-two (72) hours prior to closing to make sure that the real estate and personal property are in place and in a condition that is not substantially different from the condition at the time of Buyer's offer per this Agreement, or as improved by any agreed-upon corrective action. If substantial differences have occurred, then Buyer shall immediately notify Seller and/or Listing Broker in writing, of said differences and Buyer's requested corrective action. The parties shall be deemed to have settled such differences as of close of sale. Broker(s) and/or Salesperson(s) have no responsibility for the condition of The Property.

24. **DISCLOSURE:** Buyer acknowledges Buyer has been advised that Seller and Seller's agent may not consider the existence of or terms of Buyer's offer to be confidential. Buyer and Seller further acknowledge that the sale price and terms will be disclosed to the Greater Kalamazoo Association of REALTORS® MLS/SWMRIC, who may use it in the ordinary course of business.

25. **UNPLATTED LANDS:** Seller represents that this Property is not a new land division under the Land Division Act and Seller owns no other contiguous, unplatted land unless otherwise disclosed in writing. Seller is transferring to Buyer all available divisions, if any, under Section 108 of the Land Division Act but makes no representations as to the number. Buyer has not relied on any information or opinions of the Broker(s) or Salesperson(s) on this matter.

26. **LEGAL COUNSEL:** Buyer acknowledges that Broker(s) and/or Salesperson(s) have recommended that Buyer retain an attorney to pass upon the marketability of title to The Property. Both Seller and Buyer acknowledge that Broker(s) and/or Salesperson(s) have recommended that they each retain an attorney to ascertain that the requirements of this Agreement have been met.

27. **DUE ON SALE:** SELLER UNDERSTANDS THAT SELLING OR TRANSFERRING THE PROPERTY DOES NOT RELIEVE SELLER OF ANY MORTGAGE OBLIGATION OR OTHER INDEBTEDNESS TO WHICH THE PROPERTY IS SUBJECT, UNLESS OTHERWISE AGREED TO BY THE LENDER OR REQUIRED BY LAW OR REGULATION.

28. **CONSENT TO FEES:** Buyer and Seller acknowledge that Brokers may be offered placement fees, finder's fees or other consideration from others who become involved in the sale of The Property. Buyer and Seller hereby grant Broker(s) permission to receive such fees and/or consideration, unless otherwise agreed in writing.

29. **CASUALTY:** In the event that, on or before the closing date, any buildings or other improvements on The Property shall be damaged by fire, storm or other casualty, and the cost to repair same is in excess of 10% of the sales price, either party shall have the right to rescind this Agreement by written notice to the other party within seven (7) days after receiving notice of such casualty, and Buyer shall be entitled to a refund of any earnest money.

30. **ARBITRATION:** Seller and Buyer acknowledge that they have been informed that any claim or dispute between them over the disposition of any earnest money deposits, or arising out of or related to the physical condition of The Property or brokerage fees covered by this Agreement, may be arbitrated by separate agreement of the parties. Arbitration Agreement forms may be obtained from the Greater Kalamazoo Association of REALTORS®.

31. **EARNEST MONEY RESOLUTION:** If this Agreement is not closed in the time and manner provided, the Selling Broker shall have the right, but is not obligated, to propose a final disposition of the earnest money deposit in writing to Buyer or Buyer's Salesperson and to Seller or Seller's Salesperson. Unless Broker, within thirty (30) days of the date of giving such notice, receives different instructions in a written instrument signed by both parties, or is furnished written evidence that a lawsuit has been filed relating to enforcement or termination of this Agreement or disposition of the earnest money deposit, all parties shall be deemed to have agreed to Broker's proposed disposition of the earnest money deposit. If a party objects and no mutually agreeable disposition can be negotiated, Broker may deposit the funds by interpleader with a court of proper jurisdiction or await further actions by the parties. In the event of litigation involving the deposit, in whole or in part, the non-prevailing Buyer or Seller, as determined by the court, shall reimburse the other for reasonable attorneys' fees and expenses incurred in connection with the litigation, and shall reimburse Broker for any reasonable attorney's fees and expenses incurred in connection with the interpleader action instituted.

32. **COUNTERPARTS/SIGNATURES:** This Agreement may be signed in one or more counterparts each of which will be deemed to be an original copy of this Agreement and all of which, when taken together will be deemed to constitute one Agreement. The exchange of copies of this Agreement and signature by facsimile or other similar electronic device shall constitute effective execution and delivery of this Agreement as to the parties, and may be used in lieu of the original Agreement for all purposes. Copies shall be deemed to mean any duplicate, reproduction or similar or exact imitation of the original executed Agreement. Signatures of the parties transmitted by facsimile or other similar device shall be deemed to be their original signatures for all purposes and shall be deemed valid and binding upon the parties as if their original signatures, initials and modifications were present on the documents in the handwriting of each party. Neither Buyer nor Seller shall assert the statute of frauds or non-enforceability or validity of this Agreement because of facsimile or similar electronic device copies being used, and both parties specifically waive and relinquish any such defense. Each party agrees to provide an original signed document to the other upon request.

33. **HOME PROTECTION PLAN:** Buyer and Seller have been informed that home protection plans are available. Such plans may provide additional protection and benefit to the parties.

34. OTHER PROVISIONS: CONTINGENT UPON: BUYERS CONTINGENCIES
    1. MERCANTILE BANK APPROVAL         ① ENVIRONMENTAL SURVEY
    2. BANKRUPCY COURT APPROVAL         ② Approval @ LEGAL REVIEW OF
                                           BUYER ATTORNEY.
    SELLER TO PROVIDE:
    1. ENVIRONMENTAL STUDIES THAT WERE CONDUCTED
    2. LAND SURVEY  3. FLOOD RELEASE FROM FLOOD INSURANCE

35. **DEFAULT:** If Buyer defaults, Seller may enforce this Agreement, or may declare Buyer's right to purchase terminated, retain the deposit, and pursue Seller's legal remedies. If Seller defaults, Buyer may enforce this Agreement, or may demand return of the earnest money and pursue Buyer's legal remedies. Broker(s) and Salesperson(s) have no responsibility for the performance of this Agreement by the parties.

36. **EARNEST MONEY:** Buyer is depositing $ 10,000 (cash) (check) (note) with Broker as earnest money evidencing good faith. Broker is required by law to deposit the earnest money in a separate custodial or trust account within two (2) banking days after this Agreement is signed by all parties. If the offer made is not accepted or if the sale is not closed due to a failure to satisfy a contingency specified herein for a reason other than the fault of Buyer, the earnest money shall be refunded to Buyer. The earnest money will be applied to the purchase price at closing.

## ACCEPTANCE

WHEN SIGNED BY BOTH PARTIES, BUYER AND SELLER AGREE THAT THIS SHALL BE A BINDING AGREEMENT FOR THE SALE AND PURCHASE OF THE PROPERTY. DELIVERY OF ACCEPTANCE OF THIS OFFER AFTER SIGNING BY THE PARTIES IS NOT NECESSARY TO CREATE A BINDING AGREEMENT.

37. **TIME IS OF THE ESSENCE:** TIME IS OF THE ESSENCE WITH RESPECT TO THIS AGREEMENT. TIME LIMITS SHALL BE STRICTLY OBSERVED.
38. **AUTHORIZATION:** Buyer gives Broker until _____, 20___ _____ AM/PM to obtain Seller's written acceptance of Buyer's offer.
39. **FINAL AGREEMENT:** THIS AGREEMENT EXPRESSES THE ENTIRE UNDERSTANDING BETWEEN BUYER AND SELLER CONCERNING THIS TRANSACTION AND SUPERCEDES ALL PREVIOUS UNDERSTANDINGS, WHETHER ORAL, WRITTEN OR ELECTRONIC, INCLUDING ANY PROMOTIONAL MATERIALS OR LISTING DESCRIPTIONS. No modifications of this Agreement shall be binding unless in writing and signed by Buyer and Seller. In signing below, Buyer and Seller acknowledge that they have read the Agreement carefully before signing and have received copies of pages 1, 2, 3, 4, 5 & 6 as well as any attachments.
40. **FUTURE NOTICES:** Buyer and Seller authorize Broker(s) to use the contact information set forth below for notices after the last dated acceptance of this Agreement. During the term of this Agreement, Buyer and Seller agree to notify Broker(s) of any contact information changes. The contact information set forth below shall not constitute a material part of this Agreement and any addition or modification of the same shall not constitute a rejection of an offer, the creation of a counteroffer or an amendment to this Agreement. Any future notices required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been given: (i) at the time of personal delivery; or (ii) at the time sent by facsimile (with a successful facsimile confirmation sheet); or (iii) at the time sent by electronic mail. Future notices shall be given to Buyer's or Seller's Broker and shall constitute notice given to Buyer or Seller, respectively. If Buyer or Seller is not represented by a Broker, future notices shall be given to such Buyer or Seller directly.

Salesperson Name (print): PAUL GRAHAM
Salesperson Phone: 269-598-6484 Fax: _____
Salesperson Email: pgraham@aol.com
Buyer Street Address: _____
City: _____  State: _____  Zip: _____

X _____ (Buyer) Robert M Allen mgr West Coast Property LLC
Print Legal Name (as you wish it to appear on final papers)

X _____ Buyer
Print Legal Name (as you wish it to appear on final papers)

SELLER'S RESPONSE: (Date/Time) 12/9/2014, 20___ 9:30 AM/P.M.
41. THE ABOVE TERMS OF SALE ARE (Check one) ☒ ACCEPTED AS OFFERED  ☐ SUBJECT TO COUNTEROFFER NO. _____

Salesperson Name (print): PAUL GRAHAM
Salesperson Phone: 269-598-6484 Fax: _____
Salesperson Email: pgraham@aol.com
Seller Street Address: 7105 Oak Knolls Dr
City: Kalamazoo  State: MI  Zip: 49009

X _____ Seller _____ mgr 3 Member
GRAHAM LAND DEVELOPMENT LLC
Print Legal Name (as you wish it to appear on final papers)

X _____ Seller
Print Legal Name (as you wish it to appear on final papers)

© Copyright Greater Kalamazoo Association of REALTORS®
RBS

Rev. 12/14/12                           Page 6 of 6

151227

ADDENDUM TO AUTHORIZED BUY AND SELL AGREEMENT OF THE
GREATER KALAMAZOO ASSOCIATION OF REALTORS®

219820

DATE 12/8/, 2014

THIS ADDENDUM is attached to and made a part of Buy and Sell Agreement # 151227 between the undersigned parties dated Dec 8, 2014, covering real estate located at 715 S. KALAMAZOO ST, PAW PAW, MI 49079 (Address or Legal Description).

Terms/Conditions are modified as follows:

- SELLER TO PROVIDE A DOCUMENT THAT AUTHORIZES SELLER (PAUL GRAHAM) TO SIGN ON BEHALF OF GRAHAM LAND DEVELOPMENT LLC.
- SALE INCLUDES ALL PERSONAL PROPERTY AND TRADE FIXTURES AND LIQUOR LICENSE

Except as provided above, all of the terms and conditions of the Agreement shall remain in full force and effect.

BUYER [signature]   DATE 12/9/14
BUYER _____   DATE _____
SELLER [signature] Paul Graham for Graham Land   DATE 12/9/14
SELLER _____   DATE _____

© Copyright Greater Kalamazoo Association of REALTORS®
Rev. 5/11/2012

ABS